

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED

DEC 0 4 2013

| | | |
|---|---|---|
| WILLIAM GUNVILLE, | * | CIV 11-3022-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | GRANTING DEFENDANT'S |
| | * | MOTION FOR SUMMARY |
| UNITED STATES OF AMERICA, | * | JUDGMENT |
| | * | |
| Defendant. | * | |

Plaintiff William Gunville ("Gunville") brought this negligence action against Defendant

United States of America ("the Government") under the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 1346, to recover damages arising from a slip and fall accident that occurred at the

Indian Health Service ("IHS") hospital in Eagle Butte, South Dakota.  Doc. 1.  The Government

filed a motion for summary judgment, Doc. 15, which Gunville opposed, Doc. 20.  Because there

are no genuine issues of material fact and the Government is entitled to judgment as a matter of

law, this Court grants the Government's motion for summary judgment.

**I. Facts**

This Court takes the facts in the light most favorable to Gunville, as the non-moving

party, and draws the facts primarily from Plaintiff's Response to Defendant's Statement of

Material Facts, Doc. 19, and Plaintiff's Statement of Material Facts, Doc. 21.  Gunville's slip-

and-fall accident occurred on October 9, 2009, outside the old IHS hospital in Eagle Butte.[1]

Gunville arrived at the IHS hospital at approximately 3:00 p.m. for a medical appointment.  He

---

[1]At some point after October 9, 2009, a new IHS hospital was built in Eagle Butte, South
Dakota. Doc. 16 at 6.

parked in the IHS hospital's parking lot and entered through the hospital's main entrance, which is the most commonly used entrance. Doc. 19 at ¶ 16; Doc. 17-4 at 20-21; Doc. 21 at ¶ 5. The IHS hospital main entrance connects to the hospital parking lot via a sidewalk. Doc. 17-1. This main entrance sidewalk has a curb ramp sloping slightly downward to allow for wheelchair access to and from the IHS hospital parking lot. Doc. 19 at ¶ 24; Doc. 17-1. Perpendicular to the main entrance is a sidewalk that spans the front of the IHS hospital. Doc. 17-2; Doc. 17-3. It had been misting intermittently throughout the day on October 9, 2009, and when Gunville entered the IHS hospital he noticed that the main entrance sidewalk was wet. Doc. 17-4 at 15-17; Doc. 19 at ¶ 17; Doc. 21 at ¶ 4. Unbeknownst to Gunville, the temperature dropped while he was inside the IHS hospital, and the main entrance sidewalk went from wet to icy. Doc. 19 at ¶¶ 10, 21.

Meanwhile, Steve Brown Wolf, an IHS maintenance employee, had been fixing a boiler in an IHS apartment building located across the street from the hospital's main entrance. Doc. 19 at ¶¶ 29, 31. It was not slippery when Brown Wolf entered the apartment building at 1:00 p.m. Doc. 19 at ¶ 32; Doc. 21 at ¶ 10. Brown Wolf left the apartment building at approximately 4:00 p.m. and entered the IHS hospital through the main entrance. Doc. 19 at ¶ 34; Doc. 21 at ¶ 11. He noticed that the main entrance sidewalk had become slippery and, feeling that the situation was "starting to get dangerous," decided to put ice melt out. Doc. 19 at ¶ 34; Doc. 21 at ¶ 13. When Brown Wolf was asked during his deposition why he put ice melt out, he responded: "Because it had started to get slippery and that's what we do." Doc. 22-3 at 4. Brown Wolf retrieved some ice melt from the IHS hospital's loading dock and began spreading it on the sidewalk that runs perpendicular to the main entrance. Doc. 17-3; Doc. 19 at ¶ 38; Doc.

22-3 at 2-4. Brown Wolf intended to work his way west to the main entrance sidewalk. Doc. 22-3 at 3. When asked why he chose this route rather than starting to spread ice melt at the main entrance, Brown Wolf explained that the sidewalk running perpendicular to the main entrance was closest to where the ice melt was located and was on his way to the main entrance. Doc. 22-3 at 4-5.

While Brown Wolf was spreading the ice melt, Gunville exited the IHS hospital through the main entrance. Doc. 21 at ¶ 8. As he walked down the main entrance sidewalk, Gunville warned Nancy West, who had just parked her car in the parking lot and was preparing to walk up the main entrance sidewalk, to be careful because it was slippery. Doc. 19 at ¶ 23. At approximately the same time, Gunville saw Brown Wolf to his left spreading ice melt on the sidewalk that is perpendicular to the main entrance sidewalk. Doc. 19 at ¶ 28; Doc. 17-4 at 23. Immediately thereafter, Gunville, while he was walking down the curb ramp, slipped on the ice and fell, landing on his right hip. Doc. 17-4 at 22; Doc. 19 at ¶ 25; Doc. 21 at ¶ 7. When Gunville fell, Brown Wolf was approximately fifty to sixty feet to the east of the curb ramp and had yet to spread ice melt on the main entrance sidewalk or curb ramp. Doc. 19 at ¶ 35; Doc. 21 at ¶ 8. Brown Wolf during his deposition estimated it would have taken him "about a minute" to get from where he began spreading ice melt to the main entrance sidewalk. Doc. 19 at ¶ 39; Doc. 17-6 at 11. According to the administrative claim Gunville filed with IHS, his fall occurred at approximately 4:10 p.m. Doc. 19 at ¶ 7.

Gunville got up unassisted, Doc. 19 at ¶ 41, and drove to pick up his son. Doc. 17-4 at 29. Later that day, Gunville returned to the IHS hospital and went to the emergency room because he was in pain from his fall. Doc. 22-1 at 14. Gunville saw Brown Wolf at the IHS

hospital and recalled Brown Wolf telling him: "I was a little late, wasn't I?  Are you ok?"  Doc. 21 at ¶ 6.  Brown Wolf did not recall whether he made any such statement.  Doc. 17-6 at 12.  The parties' debate over whether any such statement constitutes some admission of fault is as close as the parties come to any genuine issue of material fact.

Gunville in his complaint alleges that the Government acted negligently by failing to use reasonable care in the maintenance of the IHS hospital sidewalks.  The Government argues that it is entitled to summary judgment because it cannot be held liable for injuries caused by the natural accumulation of ice and because it exercised reasonable care towards Gunville's safety. In the alternative, the Government argues that Gunville assumed the risk of injury and that Gunville's own contributory negligence should bar him from any recovery.  Gunville opposes the Government's motion.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011)).  A party opposing a properly made and supported motion for summary judgment

4

must cite to particular materials in the record supporting the assertion that a fact is genuinely

disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145

(8th Cir. 2012).

### III. Discussion

As noted earlier, Gunville brings this action under the FTCA. The FTCA waives the

Government's sovereign immunity protection and gives federal district courts jurisdiction over

FTCA suits for claims for:

> injury or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment,
> under circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b)(1). When the FTCA action arises at an IHS facility within the territory of

an American Indian reservation, this Court must apply the substantive law of the state in which

the reservation is located. See LaFromboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006).

Because the IHS hospital in Eagle Butte is located in the state of South Dakota, South Dakota

substantive law governs this action.

Gunville was an invitee or business visitor at the IHS hospital for purposes of South

Dakota premises liability law. A possessor of land in South Dakota "owes a business visitor or

invitee the duty of using ordinary or reasonable care for the benefit of the invitee's safety." Luke

v. Deal, 692 N.W.2d 165, 169 (S.D. 2005). This general duty includes a duty to keep the

property reasonably safe and a duty to warn invitees of concealed, dangerous conditions known

to the possessor of land. Janis v. Nash Finch Co., 780 N.W.2d 497, 501 (S.D. 2010). A

possessor of land ordinarily is not liable to an invitee for harm caused by a dangerous condition on the land that is known or obvious to the invitee. Luther v. City of Winner, 674 N.W.2d 339, 347 (S.D. 2004). The duty a possessor of land in South Dakota owes an invitee mirrors § 343 of the Restatement (Second) of Torts, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Janis, 780 N.W.2d at 502 (quoting Restatement (Second) of Torts § 343 (1965)).

The Government makes five arguments for why summary judgment should enter, but this Court finds merit with only the first such argument which is based on the holding in Budahl v. Gordon & David Associates, 323 N.W.2d 853 (S.D. 1982). Relying on Budahl, the Government argues that it is entitled to summary judgment because Budahl establishes that "a property owner or occupant is liable for damages incurred from a slip and fall on ice only if the owner causes an unnatural or artificial accumulation of ice and snow." Doc. 16 at 13. This Court does not read Budahl quite so broadly. Nevertheless, Budahl does limit a property owner's duty and in turn liability for a fall from a natural accumulation of ice and snow.

In Budahl, the plaintiff sued the defendant to recover damages for personal injuries she suffered after she slipped and fell on an icy sidewalk in front of the defendant's business. The plaintiff in Budahl asserted that the defendant's duty derived from a city ordinance requiring abutting occupants to clear their sidewalks after a snowfall. Budahl, 323 N.W.2d at 854. The

6

Supreme Court of South Dakota invoked the common law rule "that when the presence of ice and snow on a sidewalk abutting a structure is a result of natural accumulation, the responsibility to remove such accumulation falls on the municipality." Id.[2] Then, as to the assertion that the defendant owed a duty to the plaintiff under the city ordinance, the Court rejected the argument because the purpose of the city ordinance was to make property owners responsible to the city and to compel them to assist the city in performing its duty, rather than to impose a standard of care for the benefit of pedestrians. Id. at 854-55. The Supreme Court of South Dakota thus declined the plaintiff's request to "abrogate the common law rule[,]" and then stated:

> [W]e hold that an owner or occupant of property is not liable to pedestrians for injuries resulting from a fall caused by the natural accumulation of snow and ice on a sidewalk in front of the property, notwithstanding the existence of an ordinance that imposes a duty upon the owner or occupant to remove the ice and snow and penalizes the failure to do so.

Id. at 855. In Budahl, the court ultimately reversed a grant of directed verdict for the defendant because there was evidence that drainage from the defendant's business caused an unnatural accumulation of ice on which the plaintiff may have fallen. Id. at 856.

The Supreme Court of South Dakota has not addressed the "natural accumulation" rule since the Budahl decision in 1982. Two decisions from the United States District Court for the District of South Dakota have applied Budahl to slip-and-falls in parking lots owned by the Government. Pond v. United States, 07-cv-5058-JLV, 2010 WL 331920 (D.S.D. Jan. 28, 2010); Sauer v. United States, 04-cv-1021-CBK, Doc. 31 (D.S.D. Mar. 17, 2006). Pond and Sauer

---

[2] The plaintiff's earlier suit against the city in which she slipped and fell was dismissed for failure to comply with the notice requirements governing suits against municipalities. Budahl, 323 N.W.2d at 854 n.1.

demonstrate that the decision in Budahl is not limited to falls on the natural accumulation of ice and snow "on a sidewalk in front of the property[.]"  Budahl, 323 N.W.2d at 855.  As discussed below, Pond and Sauer have reached different, although not irreconcilable, results.  It is useful in understanding and properly applying the natural accumulation rule as adopted in Budahl to consider the origin of the rule and the development of alternative approaches to the rule.

States that have addressed slip-and-fall cases caused by the natural accumulation of ice and snow generally follow either the natural accumulation rule (which is also called the "Massachusetts rule") or the "Connecticut rule."  Papadopoulos v. Target Corp., 930 N.E.2d 142, 145-55 (Mass. 2010); Makeeff v. City of Bismarck, 693 N.W.2d 639, 642 (N.D. 2005); Wal-Mart Stores, Inc. v. Surratt, 102 S.W.3d 437, 442 (Tex. App. 2003); Jay Zitter, Annotation, Liability of Owner, Operator, or Other Parties for Personal Injuries Allegedly Resulting from Snow or Ice on Premises of Parking Lot, 74 A.L.R.5th 49, § 2[a] (1999).  Under the natural accumulation or Massachusetts rule, "a property owner has no duty to remove, and is not liable for injuries caused by, natural accumulations of snow and ice."  Louis A. Lehr, Jr., 3 Premises Liability 3d § 52:1 (West 2013); see also 62A Am. Jur. 2d Premises Liability § 656 (2005) (explaining that under the natural accumulation rule, "the owner of premises, in the absence of a statutory provision to the contrary, owes no duty to pedestrians to keep the public sidewalk in front of his or her premises free from natural accumulations of snow and ice"); Zitter, supra, § 2[a] ("[M]any jurisdictions subscribe to the 'natural accumulations' or 'Massachusetts' rule, under which a property owner owes no common-law duty to remove natural accumulations of ice and snow from common areas that remain under the owner's control and thus cannot be found liable for injuries resulting from a natural accumulation of ice and snow.").  The natural

8

accumulation rule is premised on the idea that:

> in a climate where there are frequent snowstorms and sudden changes in temperature, these dangerous conditions appear with a frequency and suddenness which defy prevention, and usually, correction; consequently, the danger from ice and snow in such locations is an obvious one, and the occupier of the premises may expect that an invitee on his or her premises will discover and realize the danger and protect himself or herself against it.

62A Am. Jur.2d Premises Liability § 656.

Some states follow the natural accumulation rule, but have developed exceptions to its application. For instance, Ohio follows the natural accumulation rule but recognizes that an "owner of business premises has a duty to remove natural accumulations of ice and snow which he knows, or should know, have created there a condition substantially more dangerous to his business invitees than they should reasonably have anticipated from their knowledge of weather conditions prevailing generally in the area." Mikula v. Tailors, 263 N.E.2d 316, 322 (Ohio 1970) (citation omitted); see also Miller v. Transfreight, LLC, No. 3:11-cv-430, 2013 WL 4039033, at *3 (S.D. Ohio Aug. 7, 2013) (applying Ohio law and finding that an owner of business premises has a duty to "remove natural accumulations of ice and snow which creates a danger which is not obvious and which a business invitee cannot be reasonably expected to know and of which the owner should have superior knowledge"). Some states applying the natural accumulation rule to cases involving sidewalks have refused to extend the rule to other situations. See Makeeff, 693 N.W.2d at 645 (declining to extend natural accumulation rule used in cases involving sidewalks to case where the plaintiff slipped on an icy staircase outside of building); Lehr, supra, § 52:1 ("[I]n some jurisdictions the natural accumulation rule does not apply to snow and ice on private property or on the private sidewalks and parking areas of

9

business premises. Here, a private landowner has a duty to protect an invitee from injuries resulting from natural accumulations of ice and snow on its property as distinguished from abutting sidewalks." (footnotes omitted)).

States that have adopted the Connecticut rule impose liability in conformity with the Restatement (Second) of Torts § 343 and do not distinguish between dangers that arise from the natural accumulation of snow and ice and dangers that arise from other hazards. See Papadopoulos, 930 N.E.2d at 154 ("We now will apply to hazards arising from snow and ice the same obligation that a property owner owes to lawful visitors as to all other hazards: a duty to act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." (citation omitted)); Quinlivan v. Great Atl. & Pac. Tea Co., Inc., 235 N.W.2d 732, 740 (Mich. 1975) (rejecting natural accumulation rule and stating that the Restatement (Second) of Torts § 343 was a "helpful exposition" of the duty an invitor owes an invitee with regard to ice and snow accumulation); Kremer v. Carr's Food Ctr., 462 P.2d 747, 749-50 (Alaska 1969) (rejecting application of natural accumulation rule to grocery store parking lot and applying the Restatement (Second) of Torts § 343 instead).

The Supreme Court of South Dakota has drawn the duty in slip-and-fall cases from the Restatement (Second) of Torts § 343. Janis, 780 N.W.2d at 501-02. The breadth of the Budahl holding may be fairly debated, particularly in light of the absence of any discussion of Budahl in any of the subsequent cases from the Supreme Court of South Dakota regarding slip-and-fall injuries. See e.g., Jacobs v. Dakota, Minn. & E. R.R., 806 N.W.2d 209 (S.D. 2011); Janis, 780 N.W.2d 497; Pettry v. Rapid City Area Sch. Dist., 630 N.W.2d 705 (S.D. 2001); Morrison v.

Mineral Palace Ltd. P'ship (Morrison II), 603 N.W.2d 193 (S.D. 1999).  However, the Court has

not abrogated Budahl in favor of the Connecticut rule.  The Budahl decision can be read in no

other way than to adopt the natural accumulation rule, but to not apply it when there is "any

credible evidence showing an unnatural or artificial accumulation of ice and snow . . . ."  Budahl,

323 N.W.2d at 855.  Gunville, however, makes no assertion of any such evidence and in his

response brief readily "agrees there is no evidence of an unnatural accumulation of ice that

caused him to fall[.]"  Doc. 20 at 10.  Gunville also recognizes the reasons for the natural

accumulation rule in acknowledging that "[w]eather conditions can change rapidly.  In South

Dakota weather can change in the most dramatic ways making winter-weather risks known and

obvious."  Doc. 20 at 10.

      Gunville instead argues that Budahl does not apply because he is not basing his theory

of liability on violation of a city ordinance and because IHS had knowledge of the icy sidewalk

which was not obvious to Gunville.  However, the Budahl language at issue—"we hold that an

owner or occupant of property is not liable to pedestrians for injuries resulting from a fall caused

by the natural accumulation of snow and ice on a sidewalk . . . ."—is not so qualified.  The

Budahl case does not suggest that its holding only applies when the plaintiff argues for a duty

derived from a city ordinance.  The Budahl decision likewise does not suggest that the natural

accumulation rule no longer applies when the defendant has greater knowledge of the property's

condition than does the plaintiff.  Indeed, Budahl twice has been discussed in decisions in this

Court involving slip-and-fall injuries on governmental property, despite the fact that in neither

case was the plaintiff seeking to hold the Government to some duty set by local ordinance and

in both cases it could be argued that the Government had greater knowledge of the condition of

its property. <u>Pond</u>, 2010 WL 331920; <u>Sauer</u>, 04-cv-1021-CBK. In <u>Pond</u>, the plaintiff slipped and fell in the parking lot of a public school on a South Dakota Indian reservation, and the Government moved for summary judgment relying upon <u>Budahl</u>. <u>Pond</u>, 2010 WL 331920, at *1, 3. The Honorable Judge Jeffrey L. Viken cited <u>Budahl</u> for the proposition that a "possessor of land is not liable for injuries resulting from a fall caused by the natural accumulation of snow and ice on the property." <u>Id.</u> at *3. Likewise, in <u>Sauer</u>, the Honorable Charles B. Kornmann quoted <u>Budahl</u> and applied its holding when the plaintiff fell while walking in the midst of an ongoing snowstorm in the parking lot of the post office in McIntosh, South Dakota. <u>Sauer</u>, 04-cv-1021-CBK, Doc. 31 at 5-6.

The decisions in <u>Sauer</u> and in <u>Pond</u> demonstrate both that <u>Budahl</u> applies to FTCA cases for slip and falls on Government property in South Dakota, and that whether application of <u>Budahl</u>'s natural accumulation rule requires summary judgment may depend on the source of the iciness and the length of time between the weather condition and the fall. In <u>Sauer</u>, where Judge Kornmann granted summary judgment based on the <u>Budahl</u> natural accumulation rule, a snow storm was ongoing when the plaintiff fell in the parking lot of the post office while walking toward the building. <u>Sauer</u>, 04-cv-1021-CBK, Doc. 31 at 4. In discussing the applicability of <u>Budahl</u>, Judge Kornmann reasoned:

> If the ice that caused plaintiff to slip and fall was a result of the natural accumulation of ice under wet snow during a heavy snow and ice storm, defendant cannot be held negligent. If the ice was a result of freezing and thawing from the snow piled adjacent to the parking lot, that would not be the natural accumulation of ice.

<u>Id.</u> at 6. Judge Viken in <u>Pond</u> quoted this passage from <u>Sauer</u>, but found <u>Sauer</u> distinguishable based on the fact that, unlike in <u>Sauer</u> where the plaintiff was walking during a snow storm,

12

"[c]onversely, in Ms. Pond's case, it was not snowing on the day of the incident, and the school's maintenance crew had taken no steps to remove the snow and ice prior to the incident." <u>Pond</u>, 2010 WL 331920, at *5. Judge Viken thus denied the Government's summary judgment motion in <u>Pond</u> due to the fact that the snow and ice had not recently developed. <u>Id.</u>

The situation with Gunville's slip and fall outside the IHS hospital is far closer to the situation in <u>Sauer</u> than in <u>Pond</u>. The weather in Eagle Butte had changed while Gunville was inside the IHS hospital, with the temperature dropping and making the wet sidewalk freeze over the span of the sixty to seventy-five minutes between when Gunville walked in and when he left. Gunville acknowledges that the iciness resulted from a natural weather event and not from anything that IHS had done. The natural accumulation rule as adopted in <u>Budahl</u> plainly applies, as in <u>Sauer</u> and here, when the weather event is ongoing, such as during a snowstorm or a sudden fall in temperature causing freezing of a sidewalk. At some point, as in <u>Pond</u>, when the weather event has passed and a new day has dawned, when the weather has turned and conditions have improved, it may no longer be a matter of law that the natural accumulation rule as adopted in <u>Budahl</u> shelters a possessor of land from a duty to a business invitee or visitor under South Dakota law. Here, the undisputed facts establish that Gunville's fall resulted from the natural accumulation of ice on the sidewalk and curb ramp area, such that the Government is entitled to summary judgment under South Dakota law.

The natural accumulation rule concerns the threshold question of whether the defendant owes a plaintiff a legal duty to clear natural accumulations of ice and snow. <u>Makeeff</u>, 693 N.W.2d at 642; Lehr, <u>supra</u>, § 52:1. Zitter, <u>supra</u>, § 2[a]. Some confusion has existed on whether, in a slip-and-fall case in South Dakota, the question of duty is for the court or the jury.

13

South Dakota law long has had the general rule that the "existence of a duty is a question of law to be determined by the court." Small v. McKennan Hosp., 403 N.W.2d 410, 413 (S.D. 1987) (citation omitted).  Even where foreseeability affects the extent of the duty, duty remains a question for the court under South Dakota law.  "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law." Smith ex. rel. Ross v. Lagow Constr. & Dev. Co., 642 N.W.2d 187, 192 (S.D. 2002) (citing Poelstra v. Basin Elec. Power Coop., 545 N.W.2d 823, 825-26 (S.D. 1996)).

However, in the second of two opinions in Morrison v. Mineral Palace Ltd. Partnership (Morrison II), 603 N.W.2d 193 (S.D. 1999),[3] the Supreme Court of South Dakota implied, probably unintentionally, that the jury could decide the landowner's duty in a slip and fall case. Without citation to any case, the court in Morrison II, among other things, posited that "[u]nder these circumstances [of a fall on ice in a driveway area apparently deposited by cars passing and not by any recent precipitation], reasonable minds could disagree as to what ordinary care and skill was required of [the defendant]." Morrison II, 603 N.W.2d at 197.  Judge Viken's decision in Pond came in the aftermath of Morrison II and included the statement that "[i]t is an issue for trial whether the school had a duty to create safe walking conditions near and around the south entrance to the school and whether the school violated any such duty." Pond, 2010 WL 331920, at *5.

---

[3]In Morrison v. Mineral Palace Ltd. Partnership (Morrison I), 576 N.W.2d 869 (1998), the Supreme Court of South Dakota affirmed a trial court's decision to set aside a prior jury verdict holding the premises owner liable for a slip-and-fall in a driveway area, finding a verdict awarding only economic and no non-economic damages to be improper.  In Morrison II, the court confronted and ultimately affirmed a second jury's verdict finding no liability, a result irreconcilable with the first jury verdict.  Morrison II, 603 N.W.2d at 196-98.

About six weeks after <u>Pond</u> was decided, the Supreme Court of South Dakota in <u>Janis</u>, 780 N.W.2d 497, made it abundantly clear that in slip-and-fall cases as well, the existence and scope of duty is for the court. In two separate places in the <u>Janis</u> decision, the Supreme Court of South Dakota quoted from <u>Small</u>, 403 N.W.2d at 413, that duty is a question of law for the court. <u>Janis</u>, 780 N.W.2d at 500, 503. The court in <u>Janis</u> also clearly defined the duty a possessor of land owes to business invitees. <u>Id.</u> at 501. Because the facts in <u>Janis</u> involved a plaintiff falling just inside a store on a mat under which a patch of ice had formed, the court did not address the natural accumulation doctrine of <u>Budahl</u>. After all, a patch of ice indoors beneath a mat is not a "natural accumulation of snow and ice," and the <u>Budahl</u> natural accumulation rule only applies to conditions outside. <u>Budahl</u>, 323 N.W.2d at 855. Application of the <u>Budahl</u> natural accumulation rule to the case at hand—a fall outdoors due to the icy condition of a sidewalk ramp that had just recently arisen due to a misty rain followed by dropping temperatures—compels the conclusion that the Government is entitled to summary judgment.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that the Government's Motion for Summary Judgment, Doc. 15, is granted.

Dated December 4th, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE